611 So.2d 200 (1992)
June LENOIR
v.
Clyde LENOIR.
No. 91-CA-669.
Supreme Court of Mississippi.
December 17, 1992.
Jess H. Dickinson, Dickinson & Associates, Gulfport, for appellant.
Joseph A. Kieronski, Jr., Daniel P. Self, Jr., William B. Jacob, Self & Jacob, Meridian, Robert D. Jones, Jordan & Jones, Meridian, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and McRAE, JJ.
PITTMAN, Justice, for the Court:
In June, 1990, June Lenoir, a resident of Biloxi, Mississippi, filed a Complaint For Partition Of Real Property in the Lauderdale County Chancery Court asking that the court order the partition or sale of three parcels of property in Lauderdale County belonging to herself and her husband, Clyde Lenoir, a resident of Meridian, Mississippi. Clyde Lenoir answered the complaint and counter-complained requesting a divorce based on desertion, adultery, and irreconcilable differences. June Lenoir answered the counter-complaint for divorce admitting that the parties were entitled to a divorce based on adultery and irreconcilable differences but claiming just cause, her own physical safety, for her desertion of Clyde Lenoir.
Upon Clyde Lenoir's Motion For Trial Setting, the court entered a March 13, 1991, Order setting the cause for trial on May 21, 1991, at 9:00 a.m. June Lenoir's counsel filed a Motion For Continuance on *201 March 18, 1991, explaining that he had a prior trial scheduled that would conflict with the May 21, 1991, trial date. The Motion for Continuance was never granted by the court. On May 21, 1991, Honorable George Warner of the Lauderdale County Chancery Court conducted a hearing on the partition request and divorce complaint. June Lenoir and her counsel were not present. Chancellor Warner granted the divorce on the grounds of adultery. Chancellor Warner also granted Clyde Lenoir the exclusive use and possession of Parcel One, the marital home and accompanying property. Chancellor Warner denied Clyde Lenoir any use or possession of Parcel Two, an antique shop with accompanying property which had been operated by June Lenoir. Chancellor Warner granted exclusive use and possession of Parcel Three, a vacation lot on a lake, to Clyde Lenoir. Additionally, Clyde Lenoir was granted $1,000 in court costs and $4,000 in attorney's fees at June Lenoir's expense. June Lenoir's Complaint For Partition was dismissed without prejudice.
June Lenoir filed a Motion For New Trial or Motion For Relief From Judgment, which was subsequently denied by Chancellor Warner after a hearing on the motion. The motion was based on the absence of June Lenoir and her counsel at the divorce proceeding. June Lenoir, aggrieved by the chancellor's judgment regarding the parcels of property decided without benefit of her testimony, appeals to this Court assigning as error:
I. THE CHANCELLOR ERRED IN AWARDING CLYDE LENOIR EXCLUSIVE USE AND POSSESSION OF THE MARITAL HOME WHERE THE COURT FAILED TO CONSIDER THE RESPECTIVE FINANCIAL CONDITIONS OF THE PARTIES AND FAILED TO HEAR RELEVANT EVIDENCE CONCERNING JUNE LENOIR'S DEPARTURE FROM THE HOME.
II. THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES AND COURT COSTS AGAINST JUNE LENOIR WHERE THE COURT FAILED TO CONSIDER THE RESPECTIVE FINANCIAL CONDITIONS OF THE PARTIES AND WHERE CLYDE LENOIR HAD SUFFICIENT FUNDS AND INCOME TO COVER ANY SUCH EXPENSES.
On appeal, this Court affirms the divorce, but reverses and renders the award of attorney's fees and costs. This Court further orders that all three parcels of marital property be partitioned between June Lenoir and Clyde Lenoir.

I.
Clyde and June Lenoir were married in April, 1956, in Lauderdale County, Mississippi. Three sons were born to the Lenoirs: Clyde O. "Butch" Lenoir, III, who died at six years of age, and Dennis Anthony Lenoir and Thomas Joseph Lenoir, who were emancipated and self-supporting by the time this cause was brought. Clyde Lenoir's yearly income exceeded $30,000.00. During the marriage, June Lenoir worked on a rural paper route for seven-and-a-half years and contributed her income to the couple's budget. June Lenoir's yearly income for the year preceding the trial reflected earnings of $4,000.00, and she had about $300.00 in the bank.
During the course of the marriage, Clyde and June Lenoir acquired three parcels of property as joint tenants. Parcel One, a residence located at 3838 Grandview in Meridian, Mississippi, served as the marital home until December 13, 1985, when June Lenoir left Clyde Lenoir. Clyde Lenoir continued to use the home after the 1985 separation. The marital home was completely paid for. Parcel Two, a house with accompanying property, had been used by the Lenoirs at one time as an antique shop operated by June Lenoir in Meridian, Mississippi; at the time of the divorce proceeding, it was being used to store old furniture. Parcel Three, an empty lot, was a vacation site at Dalewood Shore Lake in Meridian, Mississippi. Clyde Lenoir also owned a house trailer which was equipped and suitable for habitation. Clyde Lenoir admitted he spent a great deal of time at the trailer including spending at least three consecutive nights on one occasion.
*202 On December 13, 1985, June Lenoir moved out of the marital home. June Lenoir claims that she left the residence because of fear for her own physical well-being and personal safety. Clyde Lenoir claims that she left the residence after he discovered her at the home of O.T. Walker around midnight. After June Lenoir left the marital home, she began residing with Walker in a house owned by Walker in Biloxi, Mississippi. June Lenoir admitted that she had resided with Walker since the separation. Clyde Lenoir claims that he and June Lenoir had not cohabited since the December, 1985, separation. June Lenoir claims that she and Clyde Lenoir had lived together again for a short time after the separation, in February, 1986.
On June 20, 1990, June Lenoir filed the partition request. She employed Jess H. Dickinson of the law firm of Vaughn and Dickinson in Gulfport, Mississippi. Clyde Lenoir's answer to the partition complaint counter-claimed for a divorce based on desertion, uncondoned adultery, and irreconcilable differences.
One of the associate attorneys employed by Vaughn and Dickinson, Steven D. Slade, propounded discovery by filing interrogatories to Clyde Lenoir. Slade subsequently left the employment of Vaughn and Dickinson. Clyde Lenoir filed a motion to set a trial date. The certificate of service was addressed "June Lenoir c/o Hon. Steven D. Slade, Post Office Drawer 1100, Gulfport." When Clyde Lenoir's trial setting motion was heard by the court on March 13, 1991, counsel for June Lenoir was not present. The case was set for trial on May 21, 1991, at 9:00 a.m. Dickinson received a copy of the order setting the case for trial and discovered that he had a conflicting trial setting. Dickinson instructed J. Henry Ros, an associate attorney employed by Vaughn and Dickinson, to contact Clyde Lenoir's attorneys and inquire as to whether there was any opposition to a continuance. Ros contacted counsel for Clyde Lenoir and was informed that there was no opposition to a continuance. Ros also attended a deposition of the parties involved and discussed the continuance with Clyde Lenoir's attorneys. Again, Ros was told that no one opposed a continuance. Ros filed a Motion for Continuance on March 18, 1991, advising the chancery court of the conflict in the trial schedules. Ros failed to notice the motion for a hearing. The continuance motion, though filed, was left pending decision by the court. No order was ever entered continuing the case.
The conflicting case handled by Dickinson was Cause No. 20,971 of the Harrison County Circuit Court, which was set for trial on May 20, 1991, and scheduled to last two or three days. On May 8, 1991, the case was continued by order of Honorable James Thomas of Harrison County Circuit Court. On May 16, 1991, Dickinson travelled to Little Rock, Arkansas, due to a medical emergency, the stroke of his father, and returned to Gulfport on May 21, 1991.
On May 21, 1991, Lauderdale County Chancery Court convened. Clyde Lenoir was present with counsel. June Lenoir and her attorney, Dickinson, were not present. Chancellor Warner reviewed the court's file of the case and discovered that a Motion for Continuance had been filed. Chancellor Warner stated, "If that [another case scheduled for trial by Dickinson] were, of course, accurate, he would be entitled to a continuance as the Court must honor prior commitments." Chancellor Warner instructed Clyde Lenoir's counsel to call and check the absence to determine if June Lenoir's attorneys were in fact involved in a trial at that time. Counsel for Clyde Lenoir called the Harrison County Circuit Clerk and Court Administrator. He was informed that there was only a non-jury trial proceeding at the time in Harrison County Circuit Court and that neither of the law firms involved included lawyers Vaughn and Dickinson. The Lauderdale County Court Administrator called Vaughn and Dickinson to inquire about the activities of Ros. The Court Administrator reported to Clyde Lenoir's counsel that Ros was not in trial and was running some errands according to a secretary at the law firm. Counsel for Clyde Lenoir relayed this information to Chancellor Warner. *203 The court proceeded on the merits of Clyde Lenoir's counterclaim.
Upon learning that the court was going forward with a trial in the case, Ros attempted to contact the chancery court and explain that the absence was due to an apparent misunderstanding. Counsel for Clyde Lenoir was handed a note from the Clerk that someone from Dickinson's office was on the phone. Chancellor Warner allowed counsel to take the call. Ros was on the phone. Counsel for Clyde Lenoir advised the court of Ros's attempt to contact the court and explain. However, the court proceeded with the trial.
Chancellor Warner dismissed without prejudice June Lenoir's partition request. Chancellor Warner granted Clyde Lenoir's divorce claim based on the grounds of adultery and granted exclusive use and possession of the marital home (Parcel One) and the Dalewood vacation property (Parcel Three) to Clyde Lenoir. A right to partition the property upon which the antique shop was located (Parcel Two) was reserved for June Lenoir. The court awarded attorney's fees, suit fees, and costs to Clyde Lenoir.
Counsel for June Lenoir received a copy of the judgment and filed a Motion for New Trial pursuant to Miss.R.Civ.Proc. 59 and a j.n.o.v. motion pursuant to Miss. R.Civ.Proc. 60. The motion explained the misunderstanding regarding the continuance and the medical emergency and suggested that June Lenoir was unable to have a complete hearing on her case. Affidavits of Janis Malley, Assistant Court Administrator for Harrison County Circuit Court, Jess H. Dickinson, counsel for June Lenoir, and J. Henry Ros, associate with Dickinson, were submitted with the motion. At the hearing on the new trial/j.n.o.v. motion, June Lenoir's counsel, Dickinson, presented evidence regarding the agreement between the opposing attorneys with respect to the continuance. Dickinson stated that the mistake of fact was entirely his own fault and was not the fault of the court, Clyde Lenoir's attorneys, or of June Lenoir. The chancellor suggested that the parties negotiate a settlement and recessed to allow discussion. Unable to resolve the dispute, the hearing was reconvened. Both Clyde Lenoir and June Lenoir testified about their financial conditions and about the breakup of their marriage. The chancellor denied the new trial/j.n.o.v. motion and rendered a final judgment modifying the prior judgment allowing the Dalewood vacation property (Parcel Three) to be partitioned if June Lenoir so desired.

II.

THE CHANCELLOR DID NOT ERR IN AWARDING CLYDE LENOIR EXCLUSIVE USE AND POSSESSION OF THE MARITAL HOME.
June Lenoir argues that the chancellor abused his discretion when he awarded exclusive use and possession of the marital residence as well as the vacant lot on Dalewood Shore Lake to Clyde Lenoir. Mrs. Lenoir was granted the right to partition the remaining parcel of property, which was the lot containing a house that was previously used as an antique shop.
On appeal, this Court will not overturn the chancery court unless its findings were manifestly wrong. Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). Findings of fact made by a chancellor will not be disturbed if this Court finds substantial evidence supporting the factual findings. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). In domestic relations cases, there is no reason why a chancellor, under the broad discretion granted him, cannot in his decree award possession of the marital residence to either party. Boykin v. Boykin, 445 So.2d 538, 539 (Miss. 1984).
This Court addressed an almost identical question in Trigg v. Trigg, 498 So.2d 334 (Miss. 1986). In Trigg, we held that a separated couple, not yet divorced, may partition marital property held in joint tenancy, even though the husband resided in the residence and claimed it as a homestead exemption. In allowing this partition, this Court relied on Miss. Code Ann. § 11-21-3, *204 authorizing partitions between joint tenants. The fact the property was classified as homestead property was held to be no defense against partition. Id. at 336; (citing Welborn v. Welborn, 386 So.2d 722 (Miss. 1980); see also Miss. Code Ann. 93-3-1). Since the Trigg's marriage was for all practical purposes, over, this Court recognized an exception to the general rule requiring both spouses to consent to effectuate a transfer of homestead property. Id. 498 So.2d at 336.
Since the Trigg case is directly on point, its law is controlling in the present case. This Court is cognizant that June Lenoir voluntarily left the residence and failed to assert any semblance of a claim for the six years in which she was living with Mr. Walker. However, the mere passage of time should not deprive June Lenoir of her one-half interest in the properties that she had helped purchase and maintain and which the Lenoirs had used as a marital home. Although this Court certainly does not condone June Lenoir's actions, equity demands that she receive her just share. Considering that Mrs. Lenoir's yearly income amounted to $4,000, as opposed to Mr. Lenoir's $30,000, upholding the Chancellor's award would leave Mrs. Lenoir destitute. Aside from sheer punishment, there is no compelling reason not to partition all three marital properties. This Court is moving away from the harsh effects of punishment in domestic cases towards the just principles of fairness. Like Trigg, the Lenoir's marriage is for all practical purposes over. Having raised their children, the spark that once existed between them is now gone.
In light of the Trigg case, this Court finds that Mrs. Lenoir is entitled to the partition of all three marital properties. Presumably this partition will be accomplished through partition by sale. However, this Court is in no way throwing Mr. Lenoir out of the house in which he has lived alone for the past six years. He has made his desires to remain in the house known to the lower court. This can be achieved by bidding and buying out Mrs. Lenoir's interest in any or all of the properties. This same option is available to Mrs. Lenoir should she desire to own any of the properties. In the event that one party is unable to buy out the other, the properties should be sold and the profits derived from the sale divided equally between the parties.

III.

THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES AGAINST JUNE LENOIR.
Generally, the award of attorney's fees in divorce cases is left to the discretion of the chancery court. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988) (citing Holleman v. Holleman, 527 So.2d 90, 95 (Miss. 1988); Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982)). In the present case, the chancellor awarded Clyde $4,000 in attorneys fees and $1,000 in court costs in response to June's failure to timely appear. However, no one disputes: (1) that both parties had agreed to continue the case, (2) that June's attorney's absence on the day of the hearing (which was supposed to have been continued) was due to a misunderstanding, and (3) that the misunderstanding "was entirely [June's attorney's] own fault and was not the fault of... June." These and other relevant facts do not justify the award  particularly in view of the financial hardship that it will undoubtedly create. Clyde's yearly income exceeded $30,000; June's income on a rural paper route was $4,000 the year preceding trial. Additionally, to affirm the award is to unfairly penalize June for her attorney's error. An award of attorney's fees should never, under the circumstances, be used as a means to penalize. At most, the attorney could have been sanctioned. Only months ago, this Court reiterated the maxim that "when a party is able to pay attorney's fees, award of attorney's fees is inappropriate." Hammett v. Woods, 602 So.2d 825, 830 (Miss. 1992) (citing Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990)); see also McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982) (financial ability of party to pay attorney's *205 fees must be considered). Clyde is able to pay his own attorney's fees and should likewise do so.
Finally, the $4,000 fee should not have been awarded in June's absence and without providing her an opportunity to question its reasonableness. This Court's recent and analogous decision in Griffin v. Griffin, 579 So.2d 1266, 1268 (Miss. 1991), is instructive in this regard. In Griffin, Chief Justice Roy Noble Lee wrote that "$4,450 was a substantial fee" which should not have been awarded without first providing the absent opposing party an opportunity to cross-examine witnesses and question its reasonableness. Id. (citing cases).
In sum, this Court should reverse and render the award of both attorney's fees as well as court costs. Finding all other issues without merit, we choose not to address them.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and BANKS, JJ., concur.
McRAE, J., concurs in part and dissents in part without written opinion.
ROBERTS, J., not participating.