626 So.2d 140 (1993)
Eddie DAIGLE, Jr.
v.
Shannon Marie Decuir DAIGLE.
No. 92-CA-0562.
Supreme Court of Mississippi.
October 28, 1993.
*142 Vicky F. Williams, Billy G. Bridges, Bridges & Williams, Brandon, for appellant.
Randy A. Clark, Stanfield Carmody & Coxwell, Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
This appeal comes from a judgment in the Chancery Court of Hinds County granting Shannon Marie DeCuir Daigle separate maintenance, and denying Eddie Daigle, Jr., a divorce on the ground of habitual cruel and inhuman treatment. For the reasons set forth below, we affirm in part and reverse and render in part.

FACTS AND PROCEDURAL HISTORY
Eddie and Shannon were married on August 19, 1967. Two children were born of the marriage, Shawnette, born in 1970, and Kevin, born in 1976.
Eddie moved out of the marital home on August 12, 1988. Shannon filed a Complaint for Separate Maintenance on August 3, 1989, alleging that Eddie was guilty of adultery and desertion. The Chancery Court entered a Temporary Order on October 12, 1989, awarding Shannon custody of Kevin, granting child support and maintenance of $3,500.00 a month, as well as use of the marital home. Eddie filed his answer to the Complaint for Separate Maintenance on May 14, 1991, denying Shannon's charges. He also filed a counterclaim for divorce on the ground of Shannon's habitual cruel and inhuman treatment. Eddie alleged that Shannon's misconduct was the cause of their separation, and therefore, she was not entitled to separate maintenance. Alternatively, Eddie sought an irreconcilable differences divorce.
The Chancellor entered a Judgment for Separate Maintenance for Shannon, and dismissed Eddie's counterclaim for divorce with prejudice.
Eddie testified that he moved out of the marital home because he had had enough; there was too much pressure; and the marriage was unbearable. While Eddie testified that a main reason for the separation was due to their sexual problems, under cross-examination, he admitted that he and Shannon had engaged in sexual relations during *143 the last few months before Eddie moved out of the marital home. He also admitted that it was possible that his sexual attention had shifted from his wife to his girlfriend, Pat Gary.
There were a few specific instances that Eddie addressed pertaining to his claim that Shannon brought on this separation. The first instance involved Shannon throwing a glass at him in their bedroom. The second involved Shannon taking a golf club to the window of the office of the woman with whom Eddie was involved, Pat Gary, an employee of Eddie's. He also testified that Shannon had told him that she had rather see him [Eddie] dead than see him move out. Eddie also claimed that there was constant bickering, and that Shannon was constantly complaining about how much he worked.
Shannon denied that she moved out of the marital bedroom. She also addressed the glass-breaking instances. Shannon testified that she discovered her husband on the telephone late one night talking to Pat Gary. Eddie told her that he had strong emotional feelings for Pat Gary. Shannon stated that she got mad and threw the glass, and that she had not aimed for Eddie. Regarding the golf club instance, Shannon testified that she had received a letter from Eddie on Mother's Day weekend, May 1989, in which he told her that the marriage was over and that he wanted a divorce. Shannon stated that she was very upset. Shannon testified that she went to the office and broke the glass out of Pat Gary's office window. She said that it was a Sunday, and no one was around. Furthermore, she owned a one-half interest in the building. Shannon said that such behavior was "out of character" for her. Eddie had also admitted that it was out of character for her.
In December 1991, Eddie contacted Shannon and told her that he might be returning home after the first of the year. Shannon testified that she was suspicious, since it was getting close to a hearing on the separation. Shannon told the court that she asked Eddie if he would be willing to go to counselling as a condition of his returning home, and he told her no. Shannon said that she called Eddie back and he told her that he was not coming back.
At the time of the separation, Eddie deeded certain property to Shannon. In October 1991, Shannon's assets totalled $307,658.95, including $70,000.00 in cash and certificates of deposits.
Evidence at trial showed that Eddie was the majority stockholder in Daigle & Associates,[1] the primary business of which is insurance. The only two other shareholders were Sam Mason and Pat Gary.[2]
Eddie testified that his financial obligations exceeded his income. He explained to the court that his business had declined. Eddie showed that his income had dropped from an adjusted gross income of $355,954.40 in 1990 to $1,200.00 for the first six months of 1991. However, Shannon's counsel detailed a number of ventures that Eddie had entered into since the separation, including purchasing property in Texas for $330,000.00, and deeding such to Daigle & Associates.

MOTION TO STRIKE SHANNON'S STATEMENT OF FACTS, OR IN THE ALTERNATIVE, TO STRIKE THE OBJECTIONABLE PORTIONS
Eddie moves to strike Shannon's statement of facts, or in the alternative, to strike the objectionable portions of the statement of the facts, pursuant to Miss.S.Ct. Rules 28(a)(4) and 27, and Miss.R.Civ.Proc. 12(f).
Eddie cites no case law, and only the rules mentioned above. Rule 28(a)(4) defines the required statement of the case, stating that "[t]here shall follow the statement of facts *144 relevant to the issues presented for review, with appropriate references to the record." Rule 27 describes the contents of motions and responses to this Court. It also gives guidance on determining motions for procedural orders, and other matters inapplicable in the Motion before the Court. Miss.R.Civ. Proc. 12(f) involves motions to strike pleadings before the court.
There appear to be no misstatements regarding the facts of this case, only mischaracterizations brought on by zealous advocacy. It appears that counsel for Shannon began argument of the case in the statement of facts rather than in the argument section of the brief. As long as there are no misrepresentations, this Court can overlook the zealous nature of those portions of the facts. The Motion to Strike Shannon's Statement of Facts is denied.

STANDARD OF REVIEW
On appeal, this Court will not overturn the chancery court unless its findings were manifestly wrong. Lenoir v. Lenoir, 611 So.2d 200, 203 (Miss. 1992) (citing Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989)). The chancellor's findings of fact will not be disturbed when this Court finds substantial evidence supporting those findings. Lenoir, 611 So.2d at 203 (citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983)).

LAW

I.

WHETHER THE LOWER COURT ERRED IN DENYING EDDIE DAIGLE, JR., APPELLANT, A DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.
Eddie contends the lower court erred in denying him a divorce on the grounds of habitual cruel and inhuman treatment.
This Court has recently restated the basis for divorce on the ground of habitual cruel and inhuman treatment. In order to establish habitual, cruel and inhuman treatment, the evidence should prove conduct that:
either endanger[s] life, limb, or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance. S. Hand, Mississippi Divorce, Alimony and Child Custody § 4-12 (2d ed. Supp. 1991).
Gardner v. Gardner, 618 So.2d 108, 113-114 (Miss. 1993) (quoting Rawson v. Buta, 609 So.2d 426, 431 (Miss. 1992)). "Although cruel and inhuman treatment usually must be shown to have been `systematic and continuous,' see Robinson v. Robinson, 554 So.2d 300, 303 (Miss. 1989), a single incident may provide grounds for divorce. Ellzey v. Ellzey, 253 So.2d 249, 250 (Miss. 1971)... . A causal connection between the treatment and separation must exist. Fournet v. Fournet, 481 So.2d 326, 328 (Miss. 1985)... ." Gardner, 618 So.2d at 114.
The ground of habitual cruel and inhuman treatment may be established by a preponderance of the evidence, rather than clear and convincing evidence, and the charge "means something more than unkindness or rudeness or mere incompatibility or want of affection." Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993) (quoting Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974)).
The chancellor was correct in denying Eddie a divorce on the ground of cruel and inhuman treatment. The instances that Eddie cited appear to be isolated ones. The fact that Shannon threw a glass at Eddie upon learning that he had "strong emotional feelings" for another woman is not an unheard of reaction in such a situation. Although violent in nature, Shannon's attack of Pat Gary's office window posed no immediate danger to Eddie. The other instances alleged, i.e., constant bickering, hassling him about working too much, and the lack of intimacy, are insufficient to rise to "something more than unkindness or rudeness or mere incompatibility or want of affection." *145 See Smith, 614 So.2d at 396. We find this assignment of error to be without merit.

II.

WHETHER THE LOWER COURT ERRED IN GRANTING SEPARATE MAINTENANCE TO SHANNON MARIE DECUIR DAIGLE, APPELLEE, OR IN THE ALTERNATIVE, IF MRS. DAIGLE WAS ENTITLED THERETO, WHETHER THE AMOUNT WAS EXCESSIVE.
"Separate maintenance is `a court-created equitable relief' based upon the marriage relationship." Lynch v. Lynch, 616 So.2d 294, 296 (Miss. 1993) (quoting Robinson v. Robinson, 554 So.2d 300, 303 (Miss. 1989)). "It is well-established that `[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.'" Lynch, 616 So.2d at 296 (quoting Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 7.00 (2d ed. 1957)).
This court has stated that the chancellor may grant the wife separate maintenance if the wife is without fault in the separation, and the husband willfully abandoned her and refuses to support her. Robinson, 554 So.2d at 303 (quoting Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603 (1951)). However, a wife is not required to be totally blameless to allow an award of separate maintenance, "but her (mis)conduct must not have materially contributed to the separation." Lynch, 616 So.2d at 296 (citing Robinson, 554 So.2d at 304)).
The Court is to consider the following factors when making an award of separate maintenance:
(1) The health of both husband and wife;
(2) Their combined earning capacity;
(3) The reasonable needs of the wife and children;
(4) The necessary living expenses of the husband;
(5) The fact that the wife has free use of the home and furnishings; and
(6) Other such facts and circumstances bearing on the subject that might be shown by the evidence.
Robinson, 554 So.2d at 305 (citing Gray v. Gray, 484 So.2d 1032, 1033 (Miss. 1986)).
There is no evidence that Shannon was in any way at fault in causing the breakdown of this marriage. Eddie fails to show that Shannon was sexually unresponsive, in fact, there is testimony by Eddie that they engaged in sexual relations in the last several months leading to the separation. The two episodes involving broken glass, the thrown glass and the broken windows, both involved moments of anger due to Eddie's infidelity with Pat Gary. Neither of the two instances resulted in any injury to Eddie. The Chancellor found no fault on Shannon's part, and neither do we.
Eddie next alleges that Shannon did not allow him to return home, and is therefore barred from an award for separate maintenance. The parties had been separated three years when Eddie made his attempt at reconciliation. The attempt was also close in time to the beginning of the trial in the present action. Shannon responded to Eddie's offer to come home after three years with reasonable suspicion, as there is no evidence that he had ceased his affair with Pat Gary. Her request that counselling be a part of any reconciliation did not receive a favorable response from Eddie. Several months later, Eddie told Shannon that he did not want to get back together. At no time did she definitively refuse to take Eddie back, nor did Eddie attempt to move back into the marital home. The Chancellor did not believe the offer by Eddie to be sincere. There is nothing in the record to show that this belief was incorrect.
Eddie contends that if Shannon is entitled to separate maintenance, the amount that she was awarded was excessive. Once the Chancellor found that Shannon was entitled to separate maintenance, "the chancellor was bound by equitable principles to award her an amount sufficient to maintain her standard of living in accord with her husband's estate and ability to provide for her well being." Gray, 484 So.2d at 1033. *146 However, "separate maintenance cannot confer on the wife any greater rights than she would have had if cohabitation had continued." Williams v. Williams, 528 So.2d 296, 298 (Miss. 1988).
After considering the factors outlined above, we find that the court did not award Shannon an excessive amount for separate maintenance. Shannon has arthritis and has not worked outside the home since the birth of their first child. Eddie is apparently in good health and his earning capacity far exceeds that of his wife's. Shannon and Kevin were used to living very well. Eddie's expenses include many unprofitable financial ventures, not just the usual financial obligations, meaning that Eddie could unsaddle himself from some of the liabilities he has placed on himself. Considering all evidence, the court did not err in awarding Shannon $2,000.00 a month for separate maintenance. We find this assignment of error to be without merit.

III.

WHETHER THE LOWER COURT ERRED IN ADJUDICATING REAL PROPERTY OWNED SOLELY BY EDDIE DAIGLE, JR., APPELLANT, TO BE JOINTLY AND EQUALLY OWNED BY THE PARTIES AND IN VESTING SHANNON MARIE DECUIR DAIGLE WITH OWNERSHIP OF ONE-HALF (1/2) OF EDDIE DAIGLE, JR.'S PROFIT SHARING PLAN.
Eddie contends that the chancellor divested him of title to real property, as well as granting Shannon one-half of his profit-sharing plan. Shannon maintains that the chancellor only attempted to clarify that the real and personal property in question were both marital assets.
Regarding the profit-sharing plan, Eddie wrote Shannon a letter August 16, 1988, in which he assured Shannon that she was entitled to one-half of the profit-sharing plan. The real property in question is a lot that Shannon alleges that Eddie gave to her one Christmas. Shannon testified that Eddie had a picture of the lot and wrote Merry Christmas on the picture.
As stated above, the objective of separate maintenance is to compel the husband to return to the marital home or to pay for her separate maintenance. The wife's entitlement to separate maintenance is for a monetary amount and does not extend to the division of marital assets. Therefore, the chancery court is not authorized to divest title to real estate from the husband and invest title in the wife. Thompson v. Thompson, 527 So.2d 617, 622-623 (Miss. 1988) (citing Jones v. Jones, 234 Miss. 461, 106 So.2d 134 (1958)). Thompson set forth the general principles on this matter:
Nor should the decree [separate maintenance] award to the wife any part of the husband's estate in fee, except such as may be consumable in its use and necessary for her reasonable support. The legal duty of the husband to support his wife does not require that he convey any property to her. During cohabitation the wife has the legal right to live in the husband's home, but he is under no legal duty to convey it to her. And after separation her legal rights are no greater than before ... the court should not, under the guise of enforcing that contractual duty, deprive him of his lands or other specific property, where not necessary for the enforcement of that duty... .
Thompson, 527 So.2d at 622 (quoting Amis, Divorce and Separation in Mississippi (1st ed. 1935)).
As Eddie had conveyed certain income-producing properties to Shannon on his own, and had the means to continue to support Shannon and Kevin in the lifestyle to which they were accustomed prior to the separation, it was error for the chancellor to divest Eddie of title to the real property and to his profit-sharing funds. As this equitable remedy is not a dissolution of a marriage and dividing of marital assets, it was error for the chancellor to divest Eddie of title to the real property, and to the profit-sharing funds.
The chancellor's decision is reversed and rendered as to the divestiture of title from Eddie of the lot and of his profit-sharing plan.

*147 IV.

WHETHER THE LOWER COURT ERRED IN AWARDING MARIE DECUIR DAIGLE A LIEN AGAINST ONE-HALF (1/2) OF EDDIE DAIGLE, JR.'S PENSION, PROFIT SHARING AND/OR RETIREMENT PLAN AND PROHIBITING HIM FROM DEPLETING THE FUNDS.
Eddie contends that it was error for the chancellor to place a lien against one-half of his profit-sharing, pension and/or his retirement plan, prohibiting him from depleting the funds. Shannon contends that it was a sagacious decision to prevent Eddie from depleting the funds.
In Thompson, this Court stated that the chancery court was not without authority to impose liens to insure payment in cases where equity demands it. Id. at 623. In Dunn v. Dunn, 609 So.2d 1277 (Miss. 1992), this Court found that there was substantial evidence in the record to support the chancellor imposing an equitable lien against the husband's interest in the homestead as it was necessary to protect the wife and insure payment of the money owed, and that the chancellor did have the authority to do so.
Although there was no proof that Eddie had wasted any of his retirement funds, given some of the financial ventures with which he was involved, the chancellor did not abuse her discretion in imposing a lien against such funds to insure that the separate maintenance award was met. This assignment of error is without merit.

V.

WHETHER THE LOWER COURT ERRED IN AWARDING ATTORNEY'S FEES, COURT REPORTER'S FEES AND COURT COSTS TO SHANNON MARIE DECUIR DAIGLE.
The award of attorneys' fees in divorce cases is generally left to the discretion of the chancellor, assuming he follows the appropriate standards. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss. 1992) (citing Adams v. Adams, 591 So.2d 431, 435 (Miss. 1991)). This Court announced in McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982), the factors that will be considered when determining whether the amount is appropriate. Basically the fee should be fair and should only compensate the attorney for services rendered after it has been determined that the legal work charged was reasonably required and necessary. Dunn, 609 So.2d at 1286 (citing McKee, 418 So.2d at 767). The chancellor's decision regarding attorney's fees will not be disturbed on appeal unless it is shown the decision is manifestly wrong. Dunn, 609 So.2d at 1287. It is well-established that "when a party is able to pay attorney's fees, award of attorney's fees is inappropriate." Lenoir v. Lenoir, 611 So.2d 200, 204 (Miss. 1992) (quoting Hammett v. Woods, 602 So.2d 825, 830 (Miss. 1992)).
There is no dispute that the amount of the attorney's fees was reasonable; however, there was no proof as to whether Shannon was able to pay her own attorney's fees. In fact, she had paid her attorney $7,000.00 at the time of the trial. The chancellor awarded Shannon $8,000.00 in attorney's fees, plus costs. In Benson v. Benson, 608 So.2d 709, 712 (Miss. 1992), this Court held that the relative worth of the parties was considered in awarding attorney's fees, but reversed and rendered the award because the record did not reflect whether the wife was able to pay her own attorney's fees. Id.
Eddie Daigle has more assets than his wife; however, that is not the polestar consideration. It is whether Shannon is able to pay. Shannon has assets over $300,000.00, with $70,000.00 in cash and CDs. Moreover, she has already paid $7,000.00 to her attorney. Therefore, it was error for the chancellor to award attorney's fees in this case. There is insufficient evidence on the record that Shannon was unable to pay her own way in this action.
The chancellor's award of attorney's fees is reversed and rendered.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
*148 HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ. concur.
DAN M. LEE, P.J., concurs in results only.
NOTES
[1] Eddie also owned large percentages in three other businesses; Seventy per cent (70%) of Trees for All Seasons, located in Texas; Fifty per cent (50%) of Allentech Co., a partnership; and Sixty-five percent (65%) of Carpenter-Daigle & Co., Inc., located in Little Rock. (T. vol. II. 70, 92; vol. III. 270).
[2] Pat Gary was earning $4,758.00 a month, although her department had only realized a $6,000.00 profit for the first six months of the year. Sam Mason, on the other hand, earned $4,800.00 a month, but his department had a $55,000.00 profit in the first six months. (T. vol. II. 56-58).