# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-CA-00610-COA

**JACK D. BODNE**                                                      **APPELLANT**

**v.**

**ALICE SUSAN KING**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2000 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MERRIDA COXWELL |
| ATTORNEY FOR APPELLEE: | DONALD W. BOYKIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | PLAINTIFF GRANTED A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT. |
| DISPOSITION: | REVERSED AND REMANDED - 07/17/2001 |
| MOTION FOR REHEARING FILED: | 7/30/2001; denied 9/25/2001 |
| CERTIORARI FILED: | 10/8/2001; granted 1/24/2002 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., IRVING, AND CHANDLER, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. This is an appeal by Jack D. Bodne from a judgment entered in the Hinds County Chancery Court granting a divorce to his former wife, Alice Susan Bodne, on the ground of habitual cruel and inhuman treatment. Mr. Bodne alleges that the chancellor abused her discretion because the proof did not rise to the level necessary to establish legal grounds for divorce. Alternatively, he alleges that the chancellor abused her discretion in her division of the marital assets. Finding that Mr. Bodne's first error has merit, we reverse.

¶2. The parties were married on April 24, 1994. They lived together as husband and wife until September of 1997, when Mr. Bodne was indicted and arrested for the attempted murder of three individuals. Mr. Bodne was incarcerated for approximately two months while he attempted to make the necessary arrangements for his release on bond. During Mr. Bodne's incarceration, his wife determined that she desired a divorce and went so far as to begin going by the name of Alice Susan King. In keeping with the pleadings and the record, we will refer to the parties as Mr. Bodne and Ms. King. The parties did not resume their marital relationship at any time after Mr. Bodne was released on bond. The final disposition of his criminal charges had not occurred at the time the divorce case was tried.

### I.

¶3. The Mississippi Supreme Court has, in any number of cases, stressed that the level of proof required to

obtain a divorce on the statutory ground of habitual cruel and inhuman treatment must rise to a level beyond mere incompatibility, rudeness or even unkindness. Rather, the court has required that the proof show that the conduct of the offending spouse be such that it endangers the life or health of the other, or, alternatively, is so unnatural or infamous as to make the continuation of the marriage relationship revolting. *Daigle v. Daigle,* 626 So. 2d 140, 144 (Miss. 1993) (quoting S. Hand, *Mississippi Divorce, Alimony and Child Custody* § 4-12 (2d ed. Supp.1991)).

¶4. In this case, there was proof of conduct by Mr. Bodne that ranged over several behavioral traits that Ms. King claimed to find repelling or embarrassing and demeaning to her personally. Mr. Bodne, however, testified that much of the conduct of which he stood accused simply did not occur. When the facts are in dispute in a matter such as this, the chancellor sits as finder of fact. *Tice v. Shamrock GMS Corp.*, 735 So. 2d 443 (¶3) (Miss. 1999). As to those findings of fact, an appellate court is obligated to afford the chancellor substantial deference and we may not set aside the chancellor's decision unless we are satisfied that her findings were against the substantial weight of the credible evidence. *Steen v. Steen*, 641 So. 2d 1167, 1169 (Miss. 1994).

¶5. In the court's bench opinion, in which the chancellor found the proof sufficient to establish Ms. King's claim for divorce, the chancellor made certain limited findings of fact and did not address the remaining proof offered by Ms. King to establish her cause of action. In the absence of an affirmative finding as to the probative value of Ms. King's evidence on several of her claims, we proceed on the basis that the chancellor deemed that proof somehow unsatisfactory. Thus, if the grant of the divorce in this case is to be upheld on appeal, it must be because we find the chancellor's limited findings of fact sufficient to establish the grounds for divorce.

¶6. Other than conclusory findings that "Mr. Bodne has inflicted habitual, cruel and inhuman treatment through the marriage," the chancellor based her decision to grant a divorce primarily on the proof relating to difficulties that Ms. King claimed to experience as a result of Mr. Bodne's arrest and two-month incarceration. Beyond that, the chancellor found credible Ms. King's "statements regarding her embarrassment, humiliation regarding the jokes, and the fixation in terms of the types of jokes Mr. Bodne enjoyed." Even conceding the broad discretion given the chancellor in matters such as this, we are convinced that these findings are insufficient as a matter of law to establish Ms. King's entitlement to divorce on the ground of habitual cruel and inhuman treatment.

¶7. While it may be conceded that the difficulties suffered by Ms. King as the result of her husband's arrest and incarceration for the extended period when he was unable to make bond were quite real, we simply do not believe that being subjected to arrest or being unable to obtain post-arrest release on bond are acts of cruelty toward the detainee's spouse within the meaning of Section 93-5-1 of the Mississippi Code. As of the date of trial of the divorce, Mr. Bodne's criminal charges had not yet been resolved and there was no proof presented at the divorce trial indicating with any certainty what specific acts Mr. Bodne had been charged with committing or whether he had, in fact, committed the acts as charged. While it may be the case that proof showing one spouse has engaged in some particularly offensive or egregious criminal behavior could be considered an act that would render continuation of the marital relationship repulsive and, thus, come within the alternate theory for divorce on this ground, there simply is insufficient evidence in the record of this case to explore such a possibility. Certainly, if Mr. Bodne is ultimately convicted of the crime and sentenced to the penitentiary for attempted murder, then Ms. King would potentially have a cause of action for divorce under the third ground set out in Section 93-5-1 of the Mississippi Code. However, in

the absence of evidence of the particular nature of the offense and a showing by a preponderance of the evidence that the offense was actually committed, we are satisfied that mere indictment for criminal conduct and incarceration pending release on bond are not acts of cruel and inhuman treatment directed toward the opposite spouse such as to support a claim for divorce.

¶8. This conclusion, then, leaves the Court with the chancellor's alternate finding that Mr. Bodne's repeating of obscene jokes and use of profanity was of sufficient gravity to warrant granting a divorce. Ms. King herself testified only that she found Mr. Bodne's off-color stories embarrassing, especially when they were told in the presence of her friends. The one corroborating witness concerning this aspect of Mr. Bodne's behavior was Gwen Toncrey, who testified that, over the course of a weekend visit, Mr. Bodne might relate three or four jokes having a sexual subject. The witness did not suggest that Mr. Bodne's stories were particularly lewd or laced with vulgar profanity. Rather, she merely reiterated Ms. King's position that the subject matter of the joke made those persons present feel awkward or uncomfortable. Accepting all this as true, we do not find Mr. Bodne's conduct to be of a nature reasonably calculated to endanger Ms. King's physical or mental health, which is a necessary element of the proof. *Potts v. Potts*, 700 So. 2d 321 (¶11) (Miss. 1997) (citations omitted). In fact, Ms. King offered no proof as to how this aspect of Mr. Bodne's behavior had caused her such emotional anguish as to threaten her health or well-being. The exhibition of "insensitive and somewhat boorish, obnoxious, and selfish behavior through the period of the marriage" has been said not to rise to the requisite standard to establish habitual cruel and inhuman treatment. *Talbert v. Talbert,* 759 So. 2d 1105 (¶9) (Miss. 1999). Viewed in the light most favorable to Ms. King's position, we conclude that Mr. Bodne's behavior, even assuming the chancellor believed every aspect of Ms. King's evidence, is not more severe than that in *Talbert*.

¶9. As we have noted, Ms. King presented other evidence, including allegations relating to indulgence in child pornography by Mr. Bodne, the periodic display by Mr. Bodne of an unreasonably violent temper without substantial provocation, a selfish squandering of marital resources to purchase an airplane, and other claims of behavior not reasonably calculated to advance the marital relationship. As to all these other issues, Mr. Bodne either denied them or offered explanations that would be inconsistent with a finding that the behavior marked a cruel disregard for his wife's welfare. The chancellor made no findings as to these additional matters, and, though they are argued by Ms. King in her brief, we conclude that we must properly limit our consideration to the findings actually made by the chancellor and to the question of whether those findings actually made (a) have evidentiary support in the record, and (b) if so, rise to the level of constituting cruel and inhuman treatment as that term has been previously interpreted by the Mississippi Supreme Court. We conclude that, as to those reasons advanced by the chancellor to support her decision to award a divorce in this case, there is support in the record for the findings. But, we also conclude that, even taken in the light most favorable to Ms. King, those findings do not constitute cruel and inhuman treatment on the part of Mr. Bodne.

¶10. For that reason, we hold that the chancellor's decision to grant a divorce on the ground of cruel and inhuman treatment must be reversed. This necessarily has the effect of rendering ineffective the chancellor's decisions relating to the financial aspects of dissolving this marriage, making Mr. Bodne's second issue on appeal moot.

¶11. **THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND REMANDED. THE COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEE.**

**KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS AND CHANDLER, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, J.**

PAYNE, J., DISSENTING:

¶12. Reviewing the facts of this case, I must dissent to the majority's decision to reverse and remand. The majority quotes from *Daigle v. Daigle*, 626 So. 2d 140 (Miss. 1993), for the requisite standard of proving a divorce on grounds of habitual cruel and inhuman treatment:

> In order to establish habitual, cruel and inhuman treatment, the evidence should prove conduct that: either endanger[s] life, limb, or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.

*Daigle*, 626 So. 2d at 144. I am aware of the required standard of proof. However, contrary to the majority view, I believe that taking together the husband's indictment for attempted murder with his alleged indulgence in child pornography, selfish squandering of marital resources, and habitual telling of rude, crude jokes, the chancellor certainly had the authority to grant a divorce on grounds of habitual cruel and inhuman treatment.

¶13. First, I would call attention to the chancellor's reasoning behind her decision. In her bench opinion, the chancellor described why she believed a divorce on grounds of habitual cruel and unusual treatment was proper:

> This Court is of the opinion based upon the credible testimony of not only Ms. King, but her two corroborating witnesses, that Mr. Bodne has inflicted habitual, cruel and inhuman treatment through that marriage, especially given the incidence of the indictments and the ultimate imprisonment - well, when he was in jail for the indictment. The Court recognized that it is not considering the guilt or innocence of any indictment that has been handed to Mr. Bodne. That in and of itself has no specific bearing on the Court's decision. However, what does have bearing is the testimony of Ms. King that throughout that period of time that she could not sleep properly, eat properly, that she was under the care of a psychiatrist, and that the pressure of trying to maintain the business of the parties created stress that was for Ms. King specifically something that she could not handle.

> Additionally, the Court recognizes and finds credible her statement regarding her embarrassment, humiliation regarding the jokes and the fixation in terms of the types of jokes Mr. Bodne enjoyed and the profanity.

¶14. As the majority points out, it is true that the allegations of murder-for-hire contained in the indictments against Mr. Bodne did not include attempts on Ms. King's life. However, even these indictments, as a single incidence, can provide grounds for divorce.

> Although the cruel and inhuman treatment usually must be shown to have been "systematic and continuous," . . . *a single incident may provide grounds for divorce*. The requisite behavior may be established by a preponderance of the evidence, and the charge "means something more than

unkindness or rudeness or mere incompatibility or want of affection."

*Wilbourne v. Wilbourne*, 748 So. 2d 184 (¶4) (Miss. Ct. App. 1999) (citations omitted) (emphasis added). Additionally, the very fact that a grand jury found evidence to warrant indictments on the crimes charged is, as the chancellor found, "so unnatural and infamous as to make the marriage revolting" so as to render Ms. King unable to discharge her duties as a spouse, leaving no basis for the continuance of the marriage. I also note that Ms. King suffered physically as a result of Mr. Bodne's acts, including weight loss and her need for ongoing psychiatric care, not to mention the embarrassment and humiliation Ms. King suffered, as corroborated by other witnesses, as a result of Mr. Bodne's behavior. The chancellor found that, in addition to the indictment against him, Mr. Bodne's alleged use of profanity, shouting, telling of "dirty" jokes, and having child pornography on the company computer combined to show that Mr. Bodne had created such a revolting situation for his wife as to warrant granting Ms. King a divorce. I agree with the chancellor that this behavior meets the burden of proof for establishing habitual cruel and inhuman treatment.

> This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact. The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony. This Court views the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancery decision unless this Court finds it manifestly wrong or unsupported by substantial evidence.

*Fisher v. Fisher*, 771 So. 2d 364 (¶8) (Miss. 2000) (citations omitted). In weighing the facts in a light most favorable to Ms. King, the appellee, I find no indication that the chancellor abused her discretion in assigning more credibility to the testimonies of Ms. King and the other two witnesses on her behalf than to the testimony of Mr. Bodne, the sole witness in his behalf. The majority states that even though Ms. King suffered difficulties during the time her husband was in jail, "we simply do not believe that being subjected to arrest or being unable to obtain post-arrest release on bond are acts of cruelty toward the detainee's spouse within the meaning of Section 93-5-1 of the Mississippi Code." I submit that this alone is not the sole ground upon which the chancellor based her decision. As quoted before from her bench opinion, the additional stress of trying to run her husband's business while he was in jail, the effects on her health and her resulting reliance on a psychiatrist and medication all took their tolls on Ms. King. This is in addition to the embarrassment and humiliation Mr. Bodne forced his wife to endure due to his habitual telling of off-color jokes and stories.

¶15. Finally, I note that the majority cites *Potts v. Potts*, 700 So. 2d 321 (Miss. 1997), claiming that endangerment to physical or mental health is a necessary element of proof. Reading this selected passage from *Potts*, the context from which this rule is taken continues to explain that *either* such endangerment must occur *or it must create "reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse or such unnatural or infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible to discharge duties thereof." Potts*, 711 So. 2d at (¶11) (citing *Sandifer v. Sandifer*, 215 Miss. 414, 61 So. 2d 144 (1952)) (emphasis added). I believe the majority's reluctance to view this passage in its context has led to the faulty conclusion that Ms. King in some way must prove her husband physically harmed her or threatened to do so. However, the fact that a grand jury has returned a true bill on attempted murder of three people certainly could make one fear for her own safety. We know that she has indeed suffered physical trauma due to the unfortunate position in which her husband has placed her, namely requiring that she take care of his business while he was in jail, that she endure the continuous lewd story-

telling and loud altercations, and that she be forced to take anti-depressant medication. All of Mr. Bodne's acts combine to make the marital relation revolting to Ms. King, as the chancellor found. I believe therefore that we should give deference to the chancellor's decision.

¶16. I do not agree that this Court has the prerogative to reverse the chancellor here. Therefore, for the reasons set forth herein I dissent and would uphold the chancellor's grant of divorce based on grounds of habitual cruel and inhuman treatment.

**LEE, J., JOINS THIS SEPARATE WRITTEN OPINION.**