ISHEE, J.,
for the court.
¶ 1. The Chancery Court of DeSoto County entered an order granting James Price a divorce from his wife, “Baby” Eula Price (Eula). Aggrieved by the chancellor’s order, Eula appeals. She asserts that the chancellor erred in granting the divorce on the ground of habitual cruel and inhuman treatment. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. James and Eula were married on May 30, 2004, in DeSoto County, Missis *332 sippi. After staying together for approximately two years, they separated on or about July 1, 2006. They have no children together. Eula filed for divorce on July 3, 2006, and James filed his counterclaim four days later. Prior to trial, Eula withdrew her complaint but continued to defend against the relief sought by James.
¶ 3. During their marriage, the police were called on at least three different occasions with regard to Eula and her behavior. In November 2005, Eula, who has been diagnosed with bipolar disorder, began throwing and breaking dishes inside of her and James’s home; one was thrown with enough force to puncture a hole in the sink. In June 2006, the Price family decided to go to Dollywood on a family vacation. Shortly after the vacation had begun, Eula and James started arguing over money. She eventually attacked him, kicking him in the buttocks and repeatedly punching him in the back. She also tried to bite off his finger. Later that night, the argument escalated to the point that the police were called to the hotel room where the family was staying. There is nothing in the record to indicate that James ever laid a violent hand on Eula.
¶ 4. Additionally, and perhaps more importantly, Eula also had been indicted by a DeSoto County grand jury for the charge of false pretenses for taking out credit-card applications in James’s name. She had already pleaded guilty to this charge, and at the time of trial in this case, she was awaiting sentencing.
¶ 5. Eula’s destructive behavior continued up to the point where she actually left the home. After packing her belongings, Eula discharged a fire extinguisher inside the home, ruining most of James’s personal belongings. Eula was a habitual marijuana smoker, and although James knew of her habit before marriage, the couple argued over her constantly smoking marijuana.
¶ 6. Joshua Price, James’s son from his first marriage testified at trial. He corroborated his father’s testimony, with regard to the Dollywood incident and the plate-throwing incident. He also testified as to the condition of the home the day that Eula left. Furthermore, he testified that when he was fifteen years old, Eula became so frustrated with him that she poured hot coffee down the front of his body.
¶ 7. At the conclusion of the trial, the chancellor entered an order granting James’s request for a divorce based on cruel and inhuman treatment. The chancellor found that the incidents collectively showed a pattern of conduct that constituted cruel and inhuman treatment.
STANDARD OF REVIEW
¶ 8. The scope of review in a domestic relations case is limited by the substantial evidence/manifest error rule. Mizell v. Mizell, 708 So.2d 55, 59(¶ 12) (Miss.1998). We will not disturb a chancellor’s findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 59(¶ 13). However, we will conduct a de novo review for questions of law. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002). The chancellor’s determination of whether a spouse’s conduct rose to the level of cruel and inhuman treatment is a determination of law. Potts v. Potts, 700 So.2d 321, 322(¶ 10) (Miss.1997); Reed v. Reed, 839 So.2d 565, 569(¶ 13) (Miss.Ct.App.2003). Such a finding is reversible if the chancellor employed an erroneous legal standard. Potts, 700 So.2d at 322(¶ 10). In reviewing a divorce decree, this Court must view the facts in the light most favorable to the appellee. Boutwell v. Boutwell, 829 So.2d 1216, 1220(¶ 13) (Miss.2002).
*333 ISSUE AND ANALYSIS
Whether it was error to grant James a divorce.
¶ 9. The causes for divorce are provided for by Mississippi Code Annotated section 93-5-1 (Supp.2008), which states, in part, that a divorce decree may be based on habitual cruel and inhuman treatment. In order for a divorce to be granted properly on the ground of habitual cruel and inhuman treatment, the following must be proven by a preponderance of the evidence:
Conduct that either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Peters v. Peters, 906 So.2d 64, 68(¶ 13) (Miss.Ct.App.2004) (quoting Richard v. Richard, 711 So.2d 884, 889(¶ 22) (Miss.1998)). “The conduct must consist of ‘something more than unkindness or rudeness or mere incompatibility or want of affection.’ ” Horn v. Horn, 909 So.2d 1151, 1155(¶ 7) (Miss.Ct.App.2005) (quoting Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993)).
¶ 10. Although cruel and inhuman treatment usually must be shown to have been systematic and continuous, a single incident may provide grounds for divorce. Rakestraw v. Rakestraw, 717 So.2d 1284, 1287(¶ 8) (Miss.Ct.App.1998). There must be a causal connection between the treatment and the separation. Daigle, 626 So.2d at 144.
¶ 11. Here, there is evidence showing that, within the two-year marriage, James has been the subject of numerous physical and verbal assaults by Eula, including the Dollywood incident and the plate-throwing incident. Further, James has dealt with the destruction of his property, both during the marriage and after the separation. Additionally, Eula had pleaded guilty to a charge of false pretenses for taking out credit cards in her husband’s name. Finally, James testified that, although many of the couple’s problems involved his children, the main reason for asking for a divorce was predicated on the violence within the marriage.
¶ 12. To corroborate his testimony, James put his son, Joshua, on the stand. Joshua, who was nineteen years old at the time of trial, testified that he witnessed, first-hand, the physical abuse of his father by Eula during their family vacation to Dollywood. He also corroborated his father’s testimony with regard to the kitchen-sink incident and the fire-extinguisher incident. Furthermore, Eula, in her testimony, admitted that all of these incidents occurred.
¶ 13. The chancellor found that the defendant had shown by the preponderance of the evidence that the defendant was entitled to a divorce on the ground of habitual cruel and unusual treatment. This finding was supported by the numerous physical and verbal assaults toward James, including the Dollywood and kitchen-sink incidents. This was also supported by Eula’s destruction of the marital property and James’s personal property both before and after the separation. The chancellor also noted that Eula’s felony conviction and guilty plea to false pretenses was so infamous that it made James perceive the marriage as revolting, thus discharging him from the duties of marriage.
¶ 14. In the past, the supreme court has upheld a chancellor’s findings of habitual cruel and inhuman treatment for similar circumstances. In Ethridge v. Ethridge, *334 483 So.2d 370, 371 (1986), the supreme court found that the facts supported the finding that the former husband used physical violence on the former wife, as well as insults, abuse, and other conduct that would impair her health and physical well-being.
1Í15. Accordingly, we agree with the chancellor’s findings and find that James has met his burden of proving his ground for a divorce of cruel and inhuman treatment by a preponderance of the evidence. We find no abuse of discretion with the chancellor’s findings; therefore, this issue is without merit.
¶ 16. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.