HIBNER *v.* HIBNER.

May 18, 1953.

No. 38771　　32 Adv. S. 13　　64 So. 2d 756

*Adams, Long & Adams,* for appellant.

*Claude F. Clayton,* for appellee and cross-appellant.

HALL, J.

Appellant brought suit for divorce against appellee on the statutory ground of habitual cruel and inhuman treatment. The acts primarily complained of are that for many years past the appellee has constantly and habitually and almost daily accused him of adultery. claiming that he is constantly running after other women and that other women are constantly chasing him; that these accusations are made so often that he has become nervous and is unable to sleep, and that they are wholly false and without foundation; that, his health has thereby been affected and he fears the loss of his mind if he continues to live under such circumstances. Appellee answered the bill denying the principal allegations thereof and also filed a cross bill wherein she asked for alimony and counsel fees. At the conclusion of the evidence the chancellor dictated an opinion in the record in which he found that the parties are in-

compatible, that neither is without fault, that "the honors are about equal," and he entered a decree dismissing the original bill and the cross bill. From that decree the husband appeals and the wife cross-appeals.

In denying relief the chancellor evidently had in mind the case of Long v. Long, 160 Miss. 492, 135 So. 204, which stated that the honors were even between the parties. That case, however, did not involve the acts relied upon in this case as constituting cruel and inhuman treatment, and, so far as we can find, there is no Mississippi decision directly in point.

In Amis on Divorce and Separation in Mississippi, Section 110, page 155, it is said: "But if one spouse falsely and maliciously charge the other with adultery, without probable or just cause, for the purpose of inflicting pain, or to subject him or her to public scorn, shame, disgrace or humiliation, the act is cruel. 9 R. C. L. 345, 346, Sections 127, 128. Likewise if one spouse falsely and maliciously circulate rumors concerning the other, charging any unlawful or immoral conduct which would naturally tend to cause shame, humiliation, or disgrace, the act would be cruel. 9 R. C. L. 347, Section 128."

Again, in Amis on Divorce and Separation in Mississippi, Section 112, page 158, it is said: "And yet the most refined cruelty, the poisoned shafts of scorn, ridicule, sarcasm, contempt, insult, verbal abuse, slander, neglect, and the like, are often more painful to cultured and sensitive persons than mere blows would be. And it is well recognized that acute mental suffering may destroy the health or even endanger the life of its victim. 9 R. C. L. 341, Sections 122, 123. So █ in determining whether or not the habitual or usual conduct of the defendant has been such as to endanger the life, limb or health of the complainant, or to create a reasonable apprehension of danger thereto, his or her entire course of conduct during the period complained of should be considered; 9 R. C. L. 335, Section 115; as well also as

that of the complainant in order to show what provocation, if any, there was to cause the conduct complained of.''

We have many cases in Mississippi which hold that before a divorce can be granted on the ground of cruel and inhuman treatment the acts constituting cruelty must have been accompanied by physical violence or must be such as to engender a reasonable apprehension thereof. Those cases must be viewed, however, in the light of the acts therein complained of and the facts therein shown. For the first time in the jurisprudence of this State, so far as we can find, we are presented with the question ▄▄▄ whether false accusations of infidelity, habitually made over a long period of time, without reasonable cause, constitute such cruelty as to warrant the granting of a divorce. We align ourselves with the majority of the courts in the country which hold in the affirmative.

A case almost directly in point is Kennedy v. Kennedy, 302 Mich. 491, 5 N. W. 2d 438, 143 A. L. R. 617. Following the report of that case there is an exhaustive annotation in 143 A. L. R. at pages 623-661, from which we quote brief excerpts: ''Although it has been stated, in a few cases in which there were several acts of cruelty which together were sufficient to authorize the granting of a divorce, that the making of false charges of adultery is not of itself sufficient to constitute cruelty, it is recognized in the great majority of the cases that the making of false accusations of adultery or unchastity may of itself, where the requisite degree of suffering is caused thereby, constitute cruelty authorizing the granting of a divorce or separation even in the absence of other misconduct recognized by the courts as constituting cruelty. . . . As one objection to the granting of a divorce or separation for cruelty predicated upon false charges of adultery or improper relations with persons of the opposite sex in cases where the statute does not define cruelty or expressly require physical violence, it

has been argued that cruelty contemplates acts of physical violence or a reasonable apprehension thereof and cannot be predicated upon words alone. This argument, however, is generally rejected by the courts, upon the ground that cruelty may consist of conduct operating only upon the mind, since it is well known that such conduct alone may seriously affect the health and occasion fully as much injury as physical violence. . . . In order that false accusations may constitute cruelty, they must be made without probable cause or reasonable grounds for belief therein. . . . It has been held that the false accusations must have been made maliciously or in bad faith in order to constitute cruelty, and that the good faith of the accuser or good faith coupled with the existence of reasonable grounds for · making the accusation, is sufficient justification and prevents the making of the accusations from constituting cruelty. But it has been held that if the accusations were false and unfounded, the making thereof imports malice, without allegation or proof that there was malice, and that the intent or purpose of the person making such false and unfounded charges is immaterial, since he must have intended the natural and probable consequences of his conduct.''

Without detailing at length the evidence adduced at the trial, we think it sufficient to state that it shows overwhelmingly that ██ ██ over a long period of years appellee did constantly and habitually accuse appellant of acts of infidelity, without any grounds whatsoever therefor, and that by reason thereof his life with her became so unbearable that he finally left the home and took up his abode in another house owned by him in the immediate vicinity, moving to that place only sufficient furniture for one bedroom. While it is true that the proof shows that for some time before the separation both parties frequently used harsh language toward and at times cursed each other (and this was probably the reason why the chancellor held that neither party was without

fault) nevertheless on the main issue of the false accusations of infidelity there is no contention that there was any reasonable ground therefor or that any act or conduct of the husband provoked such charges. On the contrary, it appears from the evidence that the false accusations provoked the subsequent quarrels and abusive language exchanged between the parties. This is not a case, such as Ammons v. Ammons, 144 Miss. 314, 109 So. 795, where the misconduct alleged as cause for divorce upon the ground of cruelty was provoked by the party seeking the divorce. We are of the opinion that under the proof appellant is entitled to a divorce and the decree denying it will accordingly be reversed and a judgment will be here entered divorcing the parties from each other.

This brings us to a consideration of the wife's claim for alimony and counsel fees which was denied by the chancellor. ▮▮ The proof shows that the husband owns and operates a profitable business and owns considerable property, while the wife has very little, if any, earning capacity and comparatively little property. In the case of Winkler v. Winkler, 104 Miss. 1, 6, 61 So. 1, Ann. Cas. 1915 C 1250, we quoted with approval from the Supreme Court of Massachusetts as follows: "The question whether she or her husband was the guilty party is doubtless an element, and an important element, in determining whether alimony should be awarded to her, but it is not conclusive. She may have been guilty of such a breach of the marriage obligation as to entitle her husband to a divorce; and yet it may not be just, if her husband is comparatively rich or capable of earning money, and she is poor or weak, that she should be turned out into the world without any means of livelihood but her own exertions." The rule just stated was reiterated in the recent case of Yelverton v. Yelverton, 200 Miss. 569, 28 So. 2d 176. The husband in this case indicated at the trial his willingness to furnish his wife a home in which to live and to pay her a reasonable

amount for her support. Under the authorities mentioned we are of the opinion the wife is entitled to a reasonable allowance of alimony, commensurate with her accustomed standard of living and the ability of the husband to pay, and the cause will be remanded to the lower court for fixing the amount of such allowance, both parties being entitled to submit additional proof with reference thereto. She should also be allowed a reasonable attorney's fee for the services of her counsel in the lower court, plus fifty per cent thereof for his services in this court. Castleberry v. Castleberry, 214 Miss. 94, 58 So. 2d 67. All costs will be taxed against appellant.

Reversed in part and judgment here, and reversed in part and remanded.

*McGehee, C. J.* and *Lee, Holmes* and *Arrington, JJ.*, concur.