McCORMACK *v.* McCORMACK.

Feb. 15, 1954

No. 39023          53 Adv. S. 22          70 So. 2d 333

*Ethridge & Minniece, Dunn & Singley,* Meridian, for appellant.

M. V. B. Miller, Gerald Adams, J. V. Gipson, Donovan Ready, Jr., Meridian, for appellee.

McGEHEE, C. J.

On January 6, 1953, the appellee, Mrs. Daisy McCormack, filed a bill of complaint herein against the appellant, C. C. McCormack, asking for a divorce on the ground of habitual cruel and inhuman treatment, and for temporary and permanent alimony and for an attorney's fee for handling the divorce and alimony proceeding in the trial court. She was granted a decree of divorce on the ground stated, the sum of $300 a month as permanent alimony at the final hearing, payable on the first day of each month beginning April 1, 1953, "and continuing until the further order of this Court," and an attorney's fee of $850. The defendant filed an an-

swer in which he denied the material allegations as to habitual cruel and inhuman treatment, and thereafter filed a cross bill seeking a divorce on the same ground in his own favor. At the close of the evidence on behalf of the complainant, an order was entered allowing the defendant to withdraw his cross bill for affirmative relief.

On this appeal from the final decree in favor of Mrs. McCormack, it is urged by the appellant, C. C. Mc-Cormack, that the proof offered by his wife was wholly insufficient to sustain the allegation of habitual cruel and inhuman treatment, and insufficient to show that she was without ample means to support herself and to pay her own attorney's fee. These are the only two issues presented to us for decision.

The parties were married on October 20, 1950. They each had been formerly married and had children by such former marriages. At the time of the trial on March 16, 1953, her daughter, Daisy Jean Hall, was nineteen, and her son, George Hall, was seventeen years of age, and the appellee was thirty-six, whereas Mr. McCormack was fifty-two years of age. After the death of her former husband, Gene Hall, and until September 30, 1950, the appellee had worked at a salary of $50 or more per week for D. B. Joyce in Meridian who operated a wholesale optical business there and elsewhere; but according to her proof she is not now able to work. Since the contention of the appellant on this appeal is the alleged insufficiency of the proof to sustain the decree of divorce, it is necessary that we summarize the principal facts in issue.

The appellee and her children owned at the time of her marriage to the appellant a two-story apartment house which she had been renting for $150 per month while she and her children resided in the home of her father. When she married Mr. McCormack they and her children moved into this apartment building. She contends that prior to the separation, and until the filing

of the present suit by her for divorce, Mr. McCormack was insanely jealous of her and her former employer; that while they were living together Mr. McCormack would come home and ask "Have you heard anything from Mr. Joyce? Have you had any phone calls? Have you seen Mr. Joyce? Have you been with Mr. Joyce? The old man is in town"; that on one occasion he got mad because she turned the loud noise of the radio off and that he threw her down on the floor, injuring her hip and leg; that on another occasion he was making a great deal of noise in placing groceries on the shelf while she was attempting to talk to her daughter, and that when she asked him not to make so much noise he pushed her against the Frigidaire; that when she married Mr. McCormack she was in good health, and that during the time they were living together he was so rude to her and to her children that she became almost a nervous wreck, and to such an extent that she had to go to the hospital on different occasions; that in May, 1952, before their final separation on November 8, 1952, he packed his suitcase and left home; that in the early part of July, 1952, on the occasion when she was carrying her daughter by automobile to a military base in South Carolina where her husband was to depart for overseas duty in the army, Mr. McCormack went as far as York, Alabama, in an effort to ascertain whether or not Mr. Joyce had accompanied them on the trip, and that this action on his part was wholly unwarranted; that he told the sister of her former husband that he thought that she was still seeing her former employer, and she testified that there was no basis for this suspicion; that while she was on the trip to South Carolina he packed up again and moved away from the home; and after having returned thereto subsequent to May 24, 1952, he gave the assurance to her that he would desist making complaints about her former employer, and would not otherwise mistreat her.

The proof on behalf of the appellee further disclosed that after her return from South Carolina, and while her husband was living away from home, she went to Houston, Texas where her sister lived and that after her return in a few days he again promised not to mistreat her, and that she withdrew a bill for divorce that she had filed prior thereto but on which no service of the summons was had on him; that finally he left home again on November 8, 1952, and that she thereafter filed the present suit for divorce on January 6, 1953. In the meantime they had lived separate and apart in her apartment house for a good portion of the time.

The proof further disclosed on behalf of the appellee, and it was undisputed that he had employed one or more detectives in an effort to obtain evidence of her alleged infidelity and immoral conduct with her former employer; and he made the contention that one of these detectives had seen her and Mr. Joyce on Mt. Barton, in or near the corporate limits of Meridian, where they were seated in an automobile for approximately an hour and a half one afternoon. He further contends, and so testified, that on December 10, 1952, he and the said detective saw Mrs. McCormack and her former employer in her home when they appeared to be mixing drinks at the sink, and that he and the detective followed them in a car until they lost them in the downtown traffic.

In answer to the testimony as to the alleged incident last above mentioned, it was shown by the testimony of Mr. Joyce, and a Miss Lightsey, who was the stock manager of his stores, that they arrived from Mobile, Alabama and registered at a motel in Meridian during the afternoon of December 9th, checked into separate cabins, and were together at a store throughout the next day except while at lunch, and except when making a trip about the middle of the afternoon to the motel where Miss Lightsey went in to get certain papers or records while Mr. Joyce waited out front in his car. These two witnesses testified that they were being shadowed by

someone in a certain automobile, the license tag number of which he wrote down and later ascertained to be the automobile of the appellant; that at no time during the afternoon did he go to the home of the appellee. Moreover, the appellee positively denied that Mr. Joyce had ever been in her home while she was living with the appellant or after they had separated, or that she had been with him alone.

Mr. Joyce testified that he had never seen the appellee except on three occasions after she was released from his employment on September 30, 1950. He testified that on the first of these occasions he went into the "Straight Eight Cafe" in Columbus and that appellee was in the cafe with her husband; that the next time he saw the appellee she was with her husband at the Davis Grill, and that he had no conversation with her on that occasion; that the third time he saw her was in Mobile one Sunday morning at Constantine's Restaurant with her husband and another man who ran a place of business for the appellant in Mobile; and that he, Joyce, was with his wife, daughter and his mother at that time. He added, however, that he did see her pass his own place of business in the Threefoot Building in Meridian on one occasion but that she did not see him so far as he knew.

The appellant further contends that on December 18, 1952, the appellee was seen in an automobile with her former employer at different times between 5:15 and 8:15 in the evening, and that this same detective had knowledge of this alleged fact. On the contrary, it is undisputed that Mr. Joyce on each of his visits to Meridian would stop at the motel operated by a Mr. Payne where a register of all of the guests was kept and which was introduced in evidence and disclosed that Mr. Joyce was not registered at the motel at any time between December 10th and about December 30, 1952. He swore positively that he was in Mobile on December 18, 1952. Moreover, a friend of the appellee testified that at the

hour of approximately five o'clock that afternoon the appellee stopped by where she was getting off from work to take the witness to the hospital to deliver a gift for the baby of the appellee's daughter that was born on December 17, 1952, and that the witness remained with the appellee throughout the time that the appellant claims that he and the detective saw her riding around with Mr. Joyce. The detective did not testify and it was not shown that he would have been unavailable. In other words, the special chancellor, Hon. R. M. Bordeaux, would have been amply justified in concluding from the conflicting testimony that the appellant, after having finally left home on November 8, 1952, was merely seeking to obtain testimony of immoral conduct on the part of the appellee for the purpose of defeating any claim that she should make for alimony in another divorce suit that then seemed would be inevitable, and which was in fact filed on January 6, 1953, as aforesaid.

As to the two alleged assaults on the appellee while she was living with the appellant, the chancellor would have been warranted in accepting either the version of the appellee hereinbefore set forth in regard thereto, or he could have concluded from the testimony of the appellant that the appellee was seeking to interfere with his efforts to put away the groceries and that he merely pushed her out of the way on the occasion that she said that he pushed her against the refrigerator; and that instead of throwing her on the floor at the time she claims that her hip and leg were injured, she hit him with a picture frame on the head when he turned the radio back on full volume after she had turned it down to avoid the loud noise thereof.

■■ ■ There was ample testimony by several witnesses to sustain the chancellor's finding that she was in good health when she married the appellant and that his accusations made against her of immoral conduct, which he related to some of her relatives and friends, and other alleged mistreatment of her, including excessive marital

indulgence, had resulted in the impairment of her health. We are not justified in disturbing his finding of fact on the conflicting evidence as to the incidents hereinbefore mentioned.

On the question of whether or not the appellee was without funds with which to support herself and to pay her attorney's fee, the proof discloses under conflicting testimony that the funds that she had on hand at the time of the trial were for the most part the funds that belonged to her children. It was shown on her behalf that prior to her marriage to the appellant, her apartment had been renting at $150 per month and that her children owned two-thirds undivided interest in the same; that social security benefits had been collected by her on behalf of her children; that her son had sustained an accident from which a settlement in some amount had been obtained; and that he had agreed after their marriage to pay rent on the apartment, and in which amount the children would have been entitled to a two-thirds interest since they claimed that for a good portion of the time they were away from home on account of his mistreatment of them. Some of the $2,450 which she is alleged to have had on hand was deposited to the savings account prior to her marriage to the appellant, as shown by the records in evidence, and some portion thereof, according to her testimony, he had agreed to pay as rent.

However, it may be said on behalf of the appellant that he set up a checking account in favor of her daughter for use while in college; that he made substantial gifts to both of her children; and that he was liberal with the appellee while they were living together, and paid her the sum of $200 per month after their final separation until the time when he claims that he obtained evidence of her immoral conduct.

It is conceded that the $850 allowed for an attorney's fee was fair and reasonable, assuming that she was en-

titled to require him to pay the fee. In fact the fee allowed was much less than what was testified to be a reasonable one by disinterested members of the local bar. Nor are we able to say that the allowance of $300 per month for the support of the appellee in her state of health was excessive. The only difficulty about the proof as to the reasonableness of this alimony allowance is that the appellee, instead of making proof as to his present income and financial worth in the light of the different places of business that he operated, relies upon the income that he was receiving and the amounts that he was spending prior to their final separation, the proof of which consisted in the fact that he gave the appellee $500 per month in addition to paying the living expenses; that he was able for them to take expensive trips to New York, St. Petersburg and other places during their comparatively brief married life. While he may have spent all that he made during that time, he made no attempt to show that his present income and financial worth is not ample to justify the allowance, "until the further order of the court" as recited in the final decree. It is true that the burden of proof was on the complainant, but we are unable to say that the chancellor was manifestly wrong in that he concluded that he was able to pay the alimony and attorney's fee allowed from the places of business he was then engaged in operating, and from which he had been deriving a substantial income.

It was said in the case of Pickering v. Pickering, 51 So. 2d 740 (Miss.) that: "It is elemental that the award of alimony and the amount thereof are peculiarly matters for the decision of the chancellor. He is presumed to have taken into consideration all of the relevant factors affecting the question of alimony and his decision will not be disturbed unless manifestly wrong." Citing the cases of Aldridge v. Aldridge, 200 Miss. 874, 27 So. 2d 884, 885; Gresham v. Gresham, 198 Miss. 43, 21 So. 2d 414.

The appeal here was taken with supersedeas, and on May 18, 1953, we sustained a motion of appellee for temporary alimony and directed the appellant to pay her the sum of $200 per month as such on the first day of each month thereafter, beginning June 1, 1953, and continuing until the decision of this case upon the merits, and ordered that ''at which time, if the decree of the lower court is affirmed, the appellant shall be entitled to credit for the amounts so paid against the payments of permanent alimony awarded by the lower court.'' 64 So. 2d 763. We then continued the motion of appellee for allowance of an attorney's fee on appeal for consideration in the decision on the merits. ▮▮ We now follow our usual custom of allowing on appeal one-half of the fee allowed by the trial court. In other words, we allow her an attorney's fee for services rendered on this appeal the sum of $425 in addition to the fee allowed by the trial court for services rendered there.

We have unduly prolonged the length of this opinion due to the fact that the sufficiency of the evidence is challenged by the appellant as to the ground relied on for divorce, and because of the other issue involved. We do not undertake to review the cases of Hulett v. Hulett, 152 Miss. 476, 119 So. 581; Humber v. Humber, 109 Miss. 216, 68 So. 161; and Hibner v. Hibner, 217 Miss. 611, 64 So. 2d 756, and the numerous other cases relied upon by the appellant, but we deem it sufficient to say that we are of the opinion, after consideration of all of our previous decisions on these issues, that the proof is ample to sustain the finding of the chancellor in granting the divorce and in the fixation of alimony and attorney's fees, and that the decree appealed from should therefore be affirmed.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.

ON MOTION TO CORRECT MANDATE

May 3, 1954        63 Adv. S. 43        72 So. 2d 199

LEE, J.

This cause was affirmed on February 15, 1954. A decree was entered in the amount of $2,942.75, which includes alimony, attorneys' fees below, interest, damages, and attorneys' fees here—all lawful demands accrued to that time. The suggestion of error was thereafter overruled on March 15.

The motion seeks to correct the mandate so as to include monthly installments of alimony, accruing since the date of the decree, together with interest thereon.

The proper mandate issued. While it did not expressly provide for the payment of interest since the date of rendition of the decree, that follows as a matter of law. Section 39, Code of 1942. Monthly installments of alimony accruing subsequent to the decree here are enforceable by the trial court in conformity to the terms of its decree.

Motion overruled.

*McGehee, C. J.*, and *Hall, Kyle* and *Holmes, JJ.*, concur.