IN THE COURT OF APPEALS

8/26/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-01149 COA

DEBORAH A. RICHARD APPELLANT

v.

EVERETT CLYDE RICHARD APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM H. MYERS

COURT FROM WHICH APPEALED: JACKSON COUNTY CHANCERY COURT

ATTORNEY FOR APPELLANT: WILLIAM E. TISDALE

ATTORNEY FOR APPELLEE: BRENT M. BICKHAM

NATURE OF THE CASE: DOMESTIC: DIVORCE

TRIAL COURT DISPOSITION: APPELLEE AWARDED DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT AND CHILD CUSTODY

BEFORE McMILLIN, P.J., HERRING, AND KING, JJ.

KING, J., FOR THE COURT:

The Jackson County Chancery Court granted Everett Clyde Richard a divorce from Deborah A. Richard on the ground of habitual cruel and inhuman treatment and awarded him custody of the couple's three minor daughters. Aggrieved by this judgment, Mrs. Richard now appeals to this Court alleging the following points of error: (1) the trial court erred when it awarded Mr. Richard a divorce on the ground of habitual cruel and inhuman treatment, (2) the trial court committed reversible error by failing to allow testimony about allegations of Mr. Richard's sexual abuse of one of the couple's minor children, (3) the trial court erred in the amount of alimony it awarded, and (4) the trial court erred in failing to divide the marital property in an equitable fashion. We reverse and remand.

## FACTS

Everett Clyde and Deborah A. Richard were married for the first time in August of 1978 and divorced in March of 1984. The couple remarried in December of 1986 and separated again in October of 1994. Three daughters were born of the two unions. The girls were ages fourteen, twelve, and eleven at the time of the present divorce hearing. Prior to the separation, the couple and their children resided at the family home in Ocean Springs.

At the time of the trial, Mr. Richard was employed with the U.S. Post Office and had a gross salary of approximately $35,000 per year. He had accrued a retirement account of at least $25,000. He had completed two years of college.

Mr. Richard is in good health. However, he underwent a brief period of psychiatric counseling to learn to control his temper. Mr. Richard was prescribed Zoloft, a mild antidepressant, for about one month.

Mrs. Richard was unemployed but had worked as a substitute rural mail carrier until August of 1993, when she was involved in an automobile accident while working. She received workers compensation benefits until the dismissal of her claim due to her failure to undergo an examination by a company physician. Mrs. Richard suffered from various ailments including depression, chemical imbalance, sinusitus, and problems associated with the automobile accident. She has an eleventh grade education.

During the course of the marriage, the couple had interpersonal and financial difficulties. They had repeated arguments that resulted in bouts of physical violence. Both Mr. and Mrs. Richard have engaged in hitting each other. This hitting was sometime done in front of the children. Mrs. Richard

accused Mr. Richard of molesting their eldest daughter. Mr. Richard and the two oldest daughters deny these accusations. According to Mr. Richard, Mrs. Richard had also accused him of adultery, which he denies.

The family lived solely on the income of Mr. Richard; however, Mrs. Richard had the responsibility of paying the household bills. According to Mr. Richard, he gave Mrs. Richard his entire paycheck each pay period. Approximately two years preceding their separation Mrs. Richard failed to keep accurate account of the finances and some of the bills became delinquent. Mrs. Richard used the family income to purchase items from QVC, a television shopping network. According to Mr. Richard, she spent so much time watching QVC that she kept a handwritten inventory log of the various items offered for sale. Reportedly, Mrs. Richard also spent $500 on one telephone call to a psychic friends hotline. The telephone bill exceeded $1000 on occasion and has since been disconnected for failure to pay the bill.

After the couple separated in 1993, Mr. Richard continued to contribute between $350 to $500 every two weeks to the household. During the separation, Mrs. Richard did not pay the mortgage and the family home was foreclosed and sold.

Mr. Richard accused Mrs. Richard of failing to properly care for their children. He claimed that Mrs. Richard did not provide proper meals for the children, choosing instead to buy them fast food meals. Mr. Richard claimed that Mrs. Richard maintained the house poorly and failed to provide clean laundry for the children.

In December of 1994, Mr. Richard filed for a divorce on the grounds of habitual cruel and inhuman treatment and requested custody of the couple's three minor children. The trial was held on October 18, 1995. Mrs. Richard did not appear for trial. Prior to trial, the chancellor received two packages through Federal Express priority mail from Mrs. Richard. One package contained an empty cassette box, and the other contained a letter requesting a continuance. The chancellor turned both packages over to Mrs. Richard's attorney. Counsel for Mrs. Richard then moved for a continuance, which the chancellor denied. After a trial on the complaint, the Jackson County Chancery Court granted the divorce and gave Mr. Richard custody of the children. In addition, the court ordered, *inter alia*, that Mr. Richard provide Mrs. Richard health insurance for eighteen months, pay all medical bills covered under his insurance prior to the separation, pay all debts that he was legally obligated to pay before and after the separation, and to pay the note on the 1993 Subaru automobile driven by Mrs. Richard. The car was to remain the property of Mrs. Richard, and Mr. Richard was to maintain insurance on the vehicle for one year. Of the household goods, Mrs. Richard was given the bed, bed-frame and personal items belonging to her. Aggrieved with the disposition of this case, Mrs. Richard appealed to this Court.

I.

WHETHER THE TRIAL COURT ERRED IN GRANTING MR. RICHARD A DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.

Under the decisions of our supreme court, conduct which evinces habitual cruel and inhuman

treatment must be such that it (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger and renders the relationship unsafe for the party seeking relief, or (2) renders the marriage revolting to the non-offending spouse because it is so unnatural and infamous, and makes it impossible to carry out the duties of the marriage, therefore destroying the basis for its continuance. *Daigle v. Daigle*, 626 So. 2d 140, 144 (Miss. 1993); *Gardner v. Gardner* 618 So. 2d 108, 113-14 (Miss. 1993). The standard of proof required for habitual cruel and inhuman treatment is a preponderance of the evidence that evidences more than unkindness or rudeness or mere incompatibility or lack of affection. *Daigle*, 626 So. 2d at 144 (quoting *Smith v. Smith*, 614 So. 2d 394, 396 (Miss. 1993)). This Court will reverse the chancellor's determination only where we find manifest error and a lack of substantial evidence to support that determination. *Daigle*, 626 So. 2d at 144.

Mr. Richard complained that Mrs. Richard engaged in conduct which made it impossible to carry out the duties of the marital relationship. He claimed that she accused him of adultery, spent money irresponsibly, hit him with her fists, accused him of molesting their fourteen-year- old daughter and was generally quarrelsome. Mr. Richard contended that Mrs. Richard's accusations of sexual molestation alone constituted the necessary brutality envisioned by the case law as cruel and inhuman. Based on Mr. Richard's uncontested testimony of the above allegations, the chancellor granted Mr. Richard a divorce on the ground of habitual cruel and inhuman treatment. However, we do not find that the actions and incidents complained of reached the level of proof required for a divorce on this ground.

Mr. Richard complains first of Mrs. Richard's accusations of adultery. He testified that whenever he would come home in a good mood, Mrs. Richard would ask him if he had been with another woman or his girlfriend. While such an accusation or inquisition would certainly make life unpleasant, it does not rise to the level of treatment or conduct required to establish habitual cruel and inhuman treatment. For example, in *Skelton v. Skelton,* 111 So. 2d 392, 393 (Miss. 1959), the appellee testified that the appellant accused him of adultery whenever he arrived home late. The court reversed the chancellor's findings of habitual cruel and inhuman treatment, holding that the proof was insufficient as a matter of law to establish the ground of divorce complained of. *Id.* While in *Petersen v. Petersen*, 118 So. 2d 300, 301 (Miss. 1960), the court upheld the chancellor's finding of habitual cruel and inhuman treatment where the spouse was accused of infidelity and adultery with one particular person. However, in *Petersen*, there were other facts such as the appellant's hitting the appellee about the head with the butt of a shotgun causing her to be hospitalized for about a week, threatening to kill appellee and the children; all of which caused the appellee to become nervous and apprehensive of further physical harm and violence at the hand of the appellant. *Id.* This type of conduct when taken together was sufficient to establish the first prong of habitual cruel and inhuman treatment. In the present case, we do not find Mrs. Richard's accusations of adultery reached the severity of conduct or treatment required as a matter of law.

Mr. Richard claims Mrs. Richard spent money irresponsibly, particularly in the last two years of their marriage. He claims that she failed to pay the bills timely, shopped on QVC, and made one $500 phone call to a psychic network. Similar circumstances existed in *Kergosien v. Kergosien*, 471 So. 2d 1206, 1210 (Miss. 1985). In *Kergosien*, the appellee complained that the appellant mismanaged the family finances, but he failed to offer proof that such conduct rendered the continuance of cohabitation impossible, except at the risk of life, limb or health on the part of the appellee. *Id.* The

court reversed the chancellor's findings of habitual cruel and inhuman treatment. In the present case, Mr. Richard recognized Mrs. Richard's inability to handle the family finances, but he continued to give her large sums of money and rely on her to pay the family bills. This was irresponsible on Mr. Richard's behalf. Additionally, while Mrs. Richard's shopping habits and $500 call to a psychic network may seem curious it, does not amount to habitual cruel and inhuman treatment.

Mr. Richard testified that during their marriage Mrs. Richard hit him with her fists and cursed him. He indicated that he was a "big man" and that Mrs. Richard would not put him in the hospital. Mr. Richard never indicated to the court that he was fearful of Mrs. Richard, or that he was apprehensive of any danger in the marital relationship. Further, Mr. Richard testified that he and Mrs. Richard would often get into screaming matches and that she would curse him. These charges do not amount to "something more than unkindness or rudeness or mere incompatibility or want of affection." *Daigle*, 626 So. 2d at 144.

Mrs. Richard's accusations of child molestation were the most serious of Mr. Richard's claims against Mrs. Richard to substantiate habitual cruel and inhuman treatment. Mr. Richard contends that Mrs. Richard made this accusation during fights before their separation and after the separation. However, he never contended that Mrs. Richard's accusations were the cause of his leaving the marital home. In fact, he testified that after the initial separation he repeatedly asked Mrs. Richard to allow him to return home, which she did for one week before telling him that he had not changed and that she did not want him back in the house. Mr. Richard did not leave his marital home because of Mrs. Richard's accusation but because she asked him to leave.

Finally, Mr. Richard told the court that he had twice visited a psychiatrist, who prescribed a mild antidepressant for about a month. He told the court that he saw the psychiatrist because he was having difficulty controlling his own temper. He did not claim that any actions of Mrs. Richard caused him to have concern about his mental health, which would render his continued marriage to her unsafe for him. *Daigle*, 626 So. 2d at 144. Again, Mr. Richard did not leave home because of any fear or concern for his physical or mental health, but because Mrs. Richard asked him to go.

In the light most favorable to Mr. Richard, the facts show that the couple's continued cohabitation was undesirable and unpleasant, but not so gross, unfeeling and brutal as to render further cohabitation impossible, except at the risk of life, limb, or health on the part of Mr. Richard. *Stennis v. Stennis*, 464 So. 2d 1161, 1162 (Miss. 1985). Most certainly, the Richard's marriage was

turbulent, but the conduct cited by Mr. Richard does not sustain the ground of habitual cruel and inhuman treatment. Therefore, this Court reverses the trial court and denies the divorce on the ground of habitual cruel and inhuman treatment. Because of this determination, we do not reach the other assignments of error in this case.

**THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, HERRING, HINKEBEIN, AND SOUTHWICK, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, P.J., AND PAYNE, J.**

IN THE COURT OF APPEALS

8/26/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-01149 COA

DEBORAH A. RICHARD APPELLANT

v.

EVERETT CLYDE RICHARD APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

DIAZ, J., DISSENTING:

I respectfully dissent from the majority opinion. The circumstances, taken as a whole, prove that the trial judge did not err when he granted Mr. Richard a divorce from Mrs. Richard on the grounds of habitual cruel and inhuman treatment. The facts in this case are completely un-rebutted. Mrs. Richard did not even show up for the trial to contradict any of the accusations made against her by her

husband. The un-rebutted facts are that Mrs. Richard constantly accused her husband of having an affair, spent Mr. Richard's paycheck on items from QVC instead of paying the household bills, and caused the phone bill to be excessive in amount, until it was finally disconnected because of inability to pay the bill. Mrs. Richard also repeatedly accused Mr. Richard of having an incestuous relationship with their fourteen-year-old daughter. As a result of Mrs. Richard's behavior, Mr. Richard sought help from a psychiatrist who prescribed for him Zoloft, an anti-depressant.

It has been held by this state's supreme court that, although divorce granted on the grounds of cruel and inhuman treatment is usually due to acts of physical violence or such acts that result in apprehension thereof, false accusations of infidelity, made habitually, over a long period of time, without reasonable cause, also constitute cruel and inhuman treatment. *Hibner v Hibner,* 217 Miss. 611, 613, 64 So. 2d 756, 757 (Miss. 1953). The requirement of acts of physical violence or threats of such for a claim of cruel and inhuman treatment to lie apply only when those are the acts alleged in the complaint. *Id.* In the case at hand, there was physical violence, yet both parties were guilty of it, and it was not the major complaint; the crux of Mr. Richard's complaint of cruelty lies more in the habitual, wrongful accusations of infidelity and incest rather than in physical abuse or fear of such.

These accusations alone are extreme enough to constitute cruel and inhuman treatment. *Id.* Further, when all these things complained of are viewed as a whole, keeping in mind the habitual nature of the acts, they most certainly amount to habitual cruel and inhuman treatment.

This Court is to reverse the chancellor's ruling only where there was manifest error and a lack of substantial evidence to support the judgment. *Daigle v. Daigle,* 626 So. 2d 140, 144 (Miss. 1993). In the case *sub judice* there was an abundance of uncontroverted substantial evidence to support the judgment, and there was no manifest error on the part of the chancellor. I therefore believe that the chancellor's grant to Mr. Richard of a divorce on the grounds of habitual cruel and inhuman treatment should be affirmed.

**THOMAS, P.J., AND PAYNE, J., JOIN THIS SEPARATE OPINION.**